# Morgan Lewis

**Brendan T. Killeen**
212.309.6712
brendan.killeen@morganlewis.com

June 29, 2026

**VIA ECF**

Hon. Natasha C. Merle
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *Jane Doe v. Citigroup Inc. and Citigroup Global Markets, Inc.*
          **Case No. 1:26-cv-3579**

Your Honor:

We represent Defendants Citigroup Inc. and Citigroup Global Markets, Inc. in the above-referenced matter.[1] We write in accordance with Rule III.A of Your Honor's Individual Practices to request a pre-motion conference addressing Citi's anticipated motion to stay Plaintiff's lone SOX retaliation claim in this Action, in favor of arbitration of Plaintiff's race and sex discrimination and breach-of-contract claims. Complaint ("Compl.") ¶ 1 n.2.

## I.     A Stay Is Warranted Because Plaintiff's Race And Sex Discrimination Claims Predominate Over Her SOX Claim

Courts may "stay the balance of the proceedings" on non-arbitrable claims "pending arbitration" of arbitrable claims. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987), *abrogation on other grounds as recognized by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 n.1 (2d Cir. 2017). "Imposition of a stay becomes 'particularly appropriate if the arbitrable claims predominate the lawsuit.'" *CB Richard Ellis, Inc. v. Am. Env't Waste Mgmt.*, 1998 WL 903495, at *4 (E.D.N.Y. Dec. 4, 1998) (citing *Genesco*, 815 F.2d at 856); *Chang v. United Healthcare*, 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020) ("A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims.") (citation omitted).

The Complaint asserts only one claim: a SOX retaliation claim. In contrast, Plaintiff intends to pursue multiple other claims in arbitration, including claims for race and sex discrimination and breach of contract. *See* Compl. ¶ 1 n.2. Plaintiff's own allegations make clear that her sex and race discrimination claims will predominate over her SOX claim. The Complaint centers on Plaintiff's

---

[1] Plaintiff was employed by Citibank N.A., which, collectively with Citigroup Inc. and Citigroup Global Markets, Inc., which Plaintiff named as Defendants, will be referred to as "Citi."

**Morgan, Lewis & Bockius** LLP

101 Park Avenue
New York, NY  10178-0060
United States

T +1.212.309.6000
F +1.212.309.6001

June 29, 2026
Hon. Natasha C. Merle
Page 2

allegation that Citi terminated her because she was a "disfavored East Asian woman." *Id*. ¶ 51. Plaintiff frames any alleged resistance to the controls enhancements she proposed as driven by gender. *Id.* ¶ 41 ("Throughout [Plaintiff's] tenure at Citi, Sequeira would frequently criticize [Plaintiff] for stepping on men's toes by succeeding in tasks where the men had failed."); *see also id.* ¶¶16 (citing an employee's status as "a South Asian man"), 41 (alleging she was "chastised . . . for 'upsetting' two men"); 51 (alleging she was "a 'troublemaker'" as "a disfavored East Asian woman" for trying "to manage Citi's risk"). And she quotes or summarizes anonymous allegations regarding purported gender discrimination and misconduct by male employees from the website wallstreetdiscriminates.com, *id.* ¶ 77, which purports to be "[a] place for women globally to share unfiltered stories of discrimination in finance."

Plaintiff further alleges that the HR investigation into her conduct was due to allegations "she was biased against certain nationalities" and defends herself against such allegations by noting she is a "Chinese-heritage immigrant from Taiwan." *Id.* ¶¶ 47-49. Plaintiff claims the HR investigation "was a sham and a smokescreen designed to push out Doe because of her race, ethnicity, and gender, and in retaliation for her protected activity." *Id.* ¶ 48. Thus, with respect to whether her termination was somehow improper (the key issue in this Action) Plaintiff lists three other motivations for her termination with the alleged SOX activity an afterthought, last on her list.

Because Plaintiff's discrimination theories dominate the Complaint, arbitration will resolve the principal factual dispute in this case: why Citi terminated Plaintiff. Arbitration will determine whether Plaintiff's termination resulted from discrimination or legitimate, non-discriminatory reasons (*e.g.*, her disrespectful and racially offensive conduct towards her coworkers). *See, e.g.*, *Westbrook v. City Univ. of N.Y.*, 591 F. Supp. 2d 207, 226 (E.D.N.Y. 2008). Resolution of those issues will substantially narrow any questions remaining before this Court. *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (ordering of stay of claims against parties who were not covered by arbitration agreement where "at the very least [] significant insight will be afforded the Court and the parties by the conduct and result of the arbitration, and that this insight will prove valuable in resolving the remaining claims"); *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) ("Since the outcome of the ongoing London Arbitration will have a significant bearing on this case, Sealion's motion for a stay is granted."). Given how the discrimination claims predominate, if discovery proceeded in this Action there is a real risk that this Court would be called upon to decide discovery issues which should be resolved in arbitration. *Inner City Broad. Corp. v. Am. Fed'n of Television & Radio Artists*, 586 F. Supp. 556, 561 (S.D.N.Y. 1984) (noting the danger of a court proceeding in any manner which "usurp[s] the function of the arbitrator[]"). Even if this Court did not inadvertently usurp the arbitrator's authority, the amount of judicial intervention needed to limit discovery to the SOX claim counsels towards issuing a discretionary stay. *See Edwards v. St. George's Univ.*, 2021 WL 355149, at *5 (E.D.N.Y. Feb. 2, 2021) ("[T]he Eastern District of New York is unquestionably one of the busiest courts in the nation.")

In short, because arbitration will resolve the factual questions that dominate this dispute and substantially narrow any remaining issues, a discretionary stay is warranted.

June 29, 2026
Hon. Natasha C. Merle
Page 3

## II.     Equitable Considerations Strongly Support A Stay

Where issues to be finally determined in arbitration overlap with non-arbitrable claims, "the movant has the burden of showing that it will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party. Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd. v. Abbott Lab'ys*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). Nothing exists to suggest Citi will hinder arbitration and arbitrations before the AAA proceed expeditiously. *Compare* U.S. District Court Judicial Caseload Profile for the Eastern District of New York (median time from filing to civil trial is 53.5 months), *with* AAA Frequently Asked Questions, available at https://www.adr.org/arbitration/ (in AAA arbitration the median time to award is 17 months).

The equitable considerations strongly support issuing a stay pending arbitration. Plaintiff has sought to proceed as a Jane Doe while she seeks employment. The caselaw in this Circuit is clear that she cannot do so. *See* Dkt. 8 (Opposition to Jane Doe Motion). However, Plaintiff could pursue her claims in private arbitration while she finds employment and then return to litigate this Action later under her own name. Likewise, Citi has an extremely compelling interest in protecting the confidential information that Plaintiff had access to by virtue of her position at Citi. *See* Dkt. No. 15.  While confidentiality interests can and should be protected in this Action, it would be easier on the parties to do so in private arbitration.

A stay therefore advances the interests of both parties. Plaintiff may pursue arbitration privately while seeking employment, Citi's confidentiality interests are better protected, and the Court avoids unnecessary motion practice over anonymity and confidentiality. *The Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000) ("Stays are also particularly appropriate where they "promote judicial economy, avoidance of confusion and possible inconsistent results.") (citation omitted). Accordingly, this Court should join others which have stayed SOX claims in favor of non-arbitrable claims. *See Anderson v. Salesforce.com, Inc.*, 2018 WL 6728015, at *1, *3 (N.D. Cal. Dec. 21, 2018); *Hansen v. Musk*, 2020 WL 4004800, at *8 (D. Nev. July 15, 2020); *Kutagula* v. *Matterport, Inc.*, 2026 WL 478343, at *3 (N.D. Cal. Feb. 19, 2026); *Luong v. Super Micro Computer, Inc.*, 2024 WL 4681605, at *7 (N.D. Cal. Nov. 4, 2024).[2]

---

[2] To the extent courts have declined to stay SOX claims in favor of arbitration, they have done so where alleged race and sex discrimination and breach of contract were not significant features of the complaint or where alleged race and sex discrimination was not a claimed reason for the challenged termination decision. Further, the considerations in this action are unique because Plaintiff seeks to proceed anonymously to obtain new employment, and Citi has a significant interest in protecting its confidential information (which Plaintiff is legally, under the Gramm-Leach-Bliley Act, and contractually obligated to protect).

June 29, 2026
Hon. Natasha C. Merle
Page 4

Respectfully submitted,

*/s/ Brendan Killeen*
Brendan Killeen

CC: All counsel of record via ECF